UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TARA SALVIETTI,

      Plaintiff,

v.

ROPAK ATLANTIC, INC.,
ROPAK CORPORATION, and
JOHN MCDOWELL,

      Defendants.

Civil Action No. 04-CV-10546-WGY

## AMENDED COMPLAINT

### Parties

1. Plaintiff Tara Salvietti is an individual residing at 11 Brookside Lane, Burlington, Massachusetts.

2. Defendant Ropak Corporation ("Ropak") is a corporation with its headquarters at 660 S. State College Boulevard, Fullerton, California.

3. Defendant Ropak Atlantic, Inc. ("Ropak Atlantic") is a corporation with its headquarters at 2B Corn Road, Dayton, New Jersey.

4. On information and belief, Ropak Atlantic is a wholly owned subsidiary of Ropak.

5. Ropak Atlantic and Ropak regularly do business and solicit customers in Massachusetts.

6. Ropak Atlantic and Ropak employed Plaintiff Tara Salvietti at her home office in Quincy Massachusetts from January 2, 2002 until February 13, 2003.

7. Defendant John McDowell is an individual employed by Ropak with his primary place of business currently at Ropak's Illinois office, located at 1340 Arthur Avenue, Elk Grove Village, Illinois.

8. During Ms. Salvietti's employment with Ropak Atlantic and Ropak, Mr. McDowell was employed by Ropak Atlantic as Divisional Sales Manager at the Dayton, New Jersey location.

### Jurisdiction

9. Plaintiff filed her claims of discrimination and retaliation pursuant to applicable state law with the Massachusetts Commission Against Discrimination ("MCAD") on March 19, 2003, and filed her amended claims of discrimination with the MCAD on September 24, 2003. Pursuant to Plaintiff's request, her claims were dismissed on February 5, 2004. (See Exhibit A attached hereto). Plaintiff has, therefore, exhausted her administrative remedies as required by law.

10. Pursuant to Mass. G.L. sc. 223A § 3(a), Massachusetts has proper jurisdiction over this matter. Defendants have transacted business in the Commonwealth of Massachusetts and have purposefully availed themselves of the privilege of conducting business activities within Massachusetts.

### Facts

11. Plaintiff Tara Salvietti is a twenty-eight year old female.

12. Ms. Salvietti was employed by Ropak Atlantic and Ropak as a sales representative from January 2, 2002 until February 13, 2003.

13. Ms. Salvietti was discharged from her position at Ropak Atlantic and Ropak on February 13, 2003.

2

14. Ms. Salvietti was approximately seven months pregnant and had requested a maternity leave at the time of her termination.

15. As a sales representative for Ropak and Ropak Atlantic, Ms. Salvietti was assigned to the New England territory. Her position involved travel to customer sites to sell Ropak products, to oversee delivery of Ropak products and to ensure customer satisfaction. Ms. Salvietti developed new sales relationships and provided service to existing accounts.

16. Ms. Salvietti reported to Defendant John McDowell.

17. Ms. Salvietti performed well in her job. She received praise from her supervisors and established good rapport with existing customers while building sales relationships with new customers.

18. At the time of her discharge, Ms. Salvietti was one of only four female sales representatives employed by Ropak. At that time, Ropak employed approximately thirty five sales representatives total. At the time of Ms. Salvietti's discharge, Ropak employed no female sales managers.

19. Despite Ms. Salvietti's success and achievements as a sales representative, Defendant McDowell repeatedly excluded Ms. Salvietti and treated her differently from male sales representatives who reported to him.

20. For example, Mr. McDowell excluded Ms. Salvietti from outings with male sales representatives and other male managers and instead told Ms. Salvietti that she should socialize with "the girls," referring to female employees who provided administrative support to the sales representatives.

21. During her employment at Ropak Atlantic, Ms. Salvietti was repeatedly singled out for unfair criticism from New Jersey Plant Manager, Gary Dalton.

22. Ms. Salvietti repeatedly told Mr. McDowell that Mr. Dalton treated her differently than the male sales representatives. However, Mr. McDowell took no corrective action.

23. Additionally, Ms. Salvietti was frequently forced to endure catcalls, whistles and rude sexist comments when she visited customer sites.

24. These incidents and Ms. Salvietti's sexist treatment by Ropak Atlantic and Ropak management created a hostile work environment.

25. Ms. Salvietti complained about the hostile work environment and reported these incidents to Mr. McDowell, but Mr. McDowell took no corrective action in response to Ms. Salvietti's complaints.

26. Ms. Salvietti received lower wages than the wages of at least one of her male colleagues.

27. Ms. Salvietti's salary at Ropak Atlantic and Ropak was $40,040 annually. Her sales incentive plan included a guaranteed $10,000 minimum commission.

28. Ms. Salvietti learned that Brian Cole, a male Ropak sales representative with less seniority at Ropak was earning over $50,000 annually and that his sales incentive plan guaranteed $15,000 minimum commission.

29. Ms. Salvietti was performing work of like or comparable character that is comparable in content to the work performed by Mr. Cole. Her work was performed under similar working conditions.

30. Ms. Salvietti complained to Mr. McDowell about this disparity in pay, but Mr. McDowell took no action in response to Ms. Salvietti's complaint.

31. On or about November 4, 2002, Ms. Salvietti informed Ropak and Ropak Atlantic managers at her company of her pregnancy. When Ms. Salvietti told the Vice President of Sales and Marketing, Ralph Nelson, that she was pregnant, Mr. Nelson said

reprovingly, "these things happen" and abruptly ended his conversation with Ms. Salvietti.

32. When Ms. Salvietti later asked Mr. McDowell about Mr. Nelson's reaction to her pregnancy announcement, Mr. McDowell stated that Mr. Nelson felt the Company had "wasted a year of training" on Ms. Salvietti.

33. Soon after Ms. Salvietti announced that she was pregnant, her treatment at work changed dramatically. Before she announced her pregnancy, Mr. McDowell had called her frequently, usually on a daily basis. After she announced her pregnancy, Mr. McDowell called her only approximately once a week and he stopped returning her telephone calls and e-mails, making it difficult for Ms. Salvietti to do her job.

34. In addition, before Ms. Salvietti announced her pregnancy, Mr. McDowell frequently praised her work. After she announced her pregnancy, Mr. McDowell's praise stopped abruptly and he began to criticize Ms. Salvietti.

35. After Ms. Salvietti announced her pregnancy, Mr. McDowell repeatedly asked Ms. Salvietti whether she would return to work after her maternity leave. Each time she reaffirmed her intention to return. Nevertheless, Mr. McDowell continued to badger Ms. Salvietti about her intentions up to her unlawful termination in February, 2003.

36. On or about December 6, 2002, Ms. Salvietti met with Mr. McDowell and Ropak's Human Resources representative Dorrie Buccafusca to formally communicate her need for maternity leave. Ms. Buccafusca told Ms. Salvietti that she would get six months paid leave. Immediately, Mr. McDowell made it obvious that he did not want Ms. Salvietti to take the full maternity leave that Ms. Buccafusca had described. Ms. Salvietti felt compelled to assure him that she would not take the full six months.

37. In December, 2002, Ms. Salvietti and her husband attended the company Christmas party. During this party, Ms. Salvietti's pregnancy was repeatedly made an unpleasant focus of conversation and negative attention. For example, Mr. McDowell publicly told Ms. Salvietti's husband that he wished they had waited another year before getting pregnant.

38. Mr. McDowell humiliated Ms. Salvietti in front of her colleagues and her customers by making repeated negative references to her pregnancy and her upcoming maternity leave, stating, for instance, "my little sales girl is pregnant and now I have to cover her territory."

39. During Ms. Salvietti's employment with Ropak Atlantic and Ropak, she sent her expense reports in to Mr. McDowell and to the Company's accounting department weekly during her employment. Defendants never questioned Ms. Salvietti on any of the reports until January, 2003, after she announced her pregnancy and requested maternity leave.

40. On or about January 23, 2003, Mr. McDowell told Ms. Salvietti that he was reviewing her expense reports and calling her customers to substantiate them.

41. When Ms. Salvietti complained that she was being singled out for scrutiny, treated unfairly and discriminated against because of her gender, her pregnancy, and her request for a maternity leave, Mr. McDowell denied it.

42. Less than two weeks after Ms. Salvietti's complaints of discrimination, on February 13, 2003, Ms. Salvietti met Mr. McDowell and Ms. Buccafusca at Logan Airport, at Mr. McDowell's request, where he told Ms. Salvietti that she was terminated effective immediately and that she would receive no severance pay.

43. At the time of her discharge from employment, Ms. Salvietti was approximately seven months pregnant.

44. Before Ms. Salvietti was terminated, she had on many occasions brought to the attention of her manager Mr. McDowell the unfair treatment and unequal pay, and the hostile work environment to which she was subjected because of her gender.

45. Ms. Salvietti was allegedly terminated for minor discrepancies in her expense reports. However, similarly situated male employees egregiously misused their expense accounts and were never even reprimanded.

46. Ms. Salvietti received no offer of severance. However, Ms. Salvietti is aware of at least two male Ropak Atlantic employees who were terminated for cause and given severance packages.

47. After Ms. Salvietti's termination, Ropak replaced her by hiring a man for her position.

48. Ms. Salvietti has suffered extreme emotional distress as a result of the Defendants' actions. The physical symptoms of her emotional distress have included, but are not limited to, weight loss during her pregnancy, insomnia and high blood pressure.

## COUNT I
### Discrimination and Wrongful Termination on the Basis of Sex and/or Pregnancy in Violation of Mass. G.L. Chapter 151B
**(Against All Defendants)**

49. Ms. Salvietti restates all allegations contained in Paragraphs 1 through 48.

50. Defendants have unlawfully discriminated against Ms. Salvietti with respect to the terms, conditions, and privileges of employment because of Ms. Salvietti's gender and/or pregnancy, in violation of Mass. G.L. c. 151B, § 4(1).

51. Defendants subjected Ms. Salvietti to a hostile work environment because of her gender and/or pregnancy in violation of Mass. G.L. c. 151B, § 4(1).

52. Defendants unlawfully terminated Ms. Salvietti's employment because of her gender and/or pregnancy in violation of Mass. G.L. c. 151B, § 4(1).

53. Defendants have unlawfully coerced, intimidated, threatened and interfered with Ms. Salvietti's exercise and enjoyment of her right to be free from unlawful discrimination, in violation of Mass. G.L. c. 151B, § 4 (4A).

54. Defendants have unlawfully aided, abetted, incited, compelled and coerced unlawful discrimination against Ms. Salvietti, in violation of Mass. G.L. c. 151B, § 4(5).

55. As a result, Ms. Salvietti has suffered substantial pecuniary loss, emotional distress and other damages for which the Defendants are each liable.

56. Ms. Salvietti is also entitled to recover punitive damages and attorney's fees and costs pursuant to Mass. G.L. c. 151B.

## COUNT II
### Retaliation in Violation of Mass. G.L. Chapter 151B
(Against All Defendants)

57. Ms. Salvietti restates all allegations contained in Paragraphs 1 through 56.

58. Defendants unlawfully terminated Ms. Salvietti's employment because she has opposed unlawful discrimination based on her gender and/or pregnancy, in violation of Mass. G.L. c. 151B, § 4 (4).

59. As a result, Ms. Salvietti has suffered substantial pecuniary loss, emotional distress and other damages for which the Defendants are each liable.

60. Ms. Salvietti is also entitled to recover punitive damages and attorney's fees and costs pursuant to Mass. G.L. c. 151B.

## COUNT III
## Violation of the Massachusetts Maternity Leave Act
### (Against All Defendants)

61. Ms. Salvietti restates allegations contained in Paragraphs 1 through 60.

62. Defendants have unlawfully discriminated against Ms. Salvietti because of her request for maternity leave in violation of M.G.L. c. 149, sec. 105D.

63. Defendants have unlawfully terminated Ms. Salvietti because of her request for maternity leave in violation of M.G.L. c. 149, sec. 105D.

64. As a result, Ms. Salvietti has suffered substantial pecuniary loss, emotional distress and other damages for which the Defendants are each liable.

65. Ms. Salvietti is also entitled to recover punitive damages and attorney's fees and costs.

## COUNT IV
## Violation of the Massachusetts Equal Pay Act
### (Against All Defendants)

66. Ms. Salvietti restates allegations contained in Paragraphs 1 through 65.

67. Defendants unlawfully paid Ms. Salvietti lower wages than they paid to male employees for work of like or comparable character and comparable content.

68. Ms. Salvietti's position and the positions of more highly paid male sales representatives involved common characteristics, comparable skill, effort, responsibility and working conditions.

69. As a result, Ms. Salvietti is entitled to back pay, double damages and attorney's fees and costs.

## COUNT V
### Intentional Interference with Advantageous/Contractual Relationship
### (Against John McDowell)

70. Ms. Salvietti restates all allegations contained in Paragraphs 1 through 69.

71. Prior to Ms. Salvietti's termination from employment with Ropak, she had an advantageous employment relationship with Defendants Ropak and Ropak Atlantic.

72. Defendant John McDowell was aware of the corporate Defendants' contractual and other legal obligations to Ms. Salvietti.

73. Defendant John McDowell maliciously and knowingly induced Ropak and Ropak Atlantic to unlawfully discriminate against Ms. Salvietti with respect to the terms, conditions and privileges of employment, thereby breaching their contractual and/or other legal obligations to Ms. Salvietti.

74. Defendant John McDowell has maliciously and knowingly induced Ropak and Ropak Atlantic to unlawfully discriminate against Ms. Salvietti by terminating her employment, thereby breaching their contractual and/or other legal obligations to Ms. Salvietti.

75. Defendant John McDowell has maliciously and knowingly induced Ropak and Ropak Atlantic to unlawfully retaliate against Ms. Salvietti because she opposed unlawful discrimination, thereby breaching their contractual and/or other legal obligations to Ms. Salvietti.

76. As a result, Ms. Salvietti has suffered pecuniary harm, emotional distress and other damages for which Defendant John McDowell is liable.

## COUNT VI
### Intentional Infliction of Emotional Distress
### (Against John McDowell)

77. Ms. Salvietti restates all allegations contained in Paragraphs 1 through 76.

78. Defendant maliciously and knowingly discriminated against and retaliated against Ms. Salvietti for the purpose of causing her emotional distress.

79. Defendant maliciously and knowingly interfered with Ms. Salvietti's advantageous employment relationship for the purpose of causing Ms. Salvietti emotional distress.

80. Defendant's conduct was extreme and outrageous, beyond the bounds of decency.

81. Defendant's unlawful conduct caused Ms. Salvietti extreme emotional distress and physical harm for which Defendant is liable.

## COUNT VII
### Negligent Infliction of Emotional Distress
### (Against John McDowell)

82. Ms. Salvietti restates all allegations contained in Paragraphs 1 through 81.

83. Defendant's conduct caused Ms. Salvietti to suffer emotional distress.

84. Ms. Salvietti's emotional distress was reasonably foreseeable by the Defendant.

85. Defendant's conduct caused Ms. Salvietti extreme emotional distress and physical harm for which the Defendant is liable.

## COUNT VIII
## Violation of the Family and Medical Leave Act
### (Against All Defendants)

86. Ms. Salvietti restates all allegations contained in Paragraphs 1 through 85.

87. Ms. Salvietti was eligible for leave and requested maternity leave pursuant to the Family and Medical Leave Act.

88. Defendants unlawfully interfered with, restrained and denied Ms. Salvietti's exercise or attempt to exercise her rights in violation of 29 U.S.C. § 2615 (a)(1).

89. Defendants terminated Ms. Salvietti's employment in violation of 29 U.S.C. § 2615(a)(1).

90. Defendants unlawfully discriminated against Ms. Salvietti and terminated her employment because she opposed the Defendants' unlawful interference with her taking of leave and their discrimination against her because of her request for leave, in violation of 29 USC § 2615 (a)(2).

91. As a result, Ms. Salvietti has suffered substantial pecuniary loss and other damages for which defendants are each liable.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL CLAIMS.**

**REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff Tara Salvietti requests that this Court award to Plaintiff back pay, front pay, lost wages and benefits, emotional distress damages, punitive damages, double damages, and attorneys' fees and costs, and award to Plaintiff all other relief as the Court deems just.

Respectfully submitted,
TARA SALVIETTI
By Her Attorneys,

_____
Tamsin R. Kaplan BBO # 561558
Kathleen H. Culver, BBO # 647587
TAMSIN R. KAPLAN & ASSOCIATES, P.C.
90 Concord Avenue
Belmont, MA 02478
(617) 484-3210

Dated: April 2, 2004

## CERTIFICATE OF SERVICE

I, Tamsin R. Kaplan, hereby certify that I have served a copy of the foregoing document on this 2nd day of April, 2004 by fax and first class mail upon the attorney of record for the Defendants, Christopher J. Perry, Littler Mendelson, P.C., 225 Franklin Street, 26th Floor, Boston, MA 02110.

_____
Tamsin R. Kaplan